**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MAURICE TAYLOR,

                      Petitioner,

    -vs.-

WILLIAM CONNELLY, SUPERINTENDENT
OF FISHKILL CORRECTIONAL FACILITY,

                     Respondent.
----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
14-cv-612 (ADS)

**APPEARANCES:**

**Christopher J. Cassar P.C.**
*Attorneys for the Petitioner*
13 East Carver Street
Huntington, NY 11743
      By:  Christopher J. Cassar, Esq., Of Counsel

**Suffolk County District Attorney's Office**
*Attorneys for the Respondent*
Criminal Courts Building
200 Center Drive
Riverhead, NY 11901
      By:  Glenn D. Green, Assistant District Attorney, Of Counsel

**SPATT, J.**

On January 29, 2014, the Petitioner Maurice Taylor (the "Petitioner"), presently

incarcerated at the Fishkill Correctional Facility in Beacon, New York, brought this petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254  to vacate, set aside, or correct his New York

State court judgment of conviction and sentence.  The Petitioner is currently serving a

determinate term of eight years imprisonment in connection with a conviction of criminal

possession of a controlled substance in the second degree and assault in the second degree.

The charges in this case arose from a stop on October 7, 2008 by two policemen of the Petitioner's vehicle for certain apparent New York State vehicle and traffic law violations, after which the Petitioner attacked the police officers and tried to flee the scene. At the time, the Petitioner was in possession of narcotics, which were ultimately recovered by the police after the Petitioner tossed them from his person.

Here, the Petitioner argues that the New York trial court (1) improperly denied his motion to suppress certain evidence; (2) improperly admitted testimony that the policemen were previously familiar with the Petitioner; (3) improperly admitted radio calls from one of the injured police officers; (4) improperly responded to the jury's partial verdict note; (5) improperly denied the Petitioner's request to charge lesser-included offenses; and (6) imposed an excessive sentence. The Petitioner also contends that the evidence presented at the trial was insufficient to establish the Petitioner's guilt beyond a reasonable doubt.

For the reasons set forth, the Court dismisses the Petitioner's habeas petition.

## I. BACKGROUND

At the time of the underlying incident, Defective Christopher Breuer was assigned to the Neighborhood Enforcement Special Operations Team ("NESOT"), a unit within the Suffolk County Police Department, which engaged in street level narcotics investigations.

Breuer knew the Petitioner for about ten years prior to October 7, 2008, having spoken to him at least a half dozen times over that period. (Transcript ("Tr.") 450).

Detective James Ryan was also assigned to NESOT. (Tr. 628.) He was also previously familiar with the Petitioner, in part from having taken a statement from him in 2004, which lasted 30-45 minutes. (Tr. 629-30.)

On October 7, 2008, at approximately 4:45 p.m., Breuer and Ryan were driving south in Huntington Station on Folsom Avenue in an unmarked Mercury Mountaineer. (Tr. 463-64.) Breuer was dressed in jeans and a long sleeve shirt, wearing a vest – which had "Police" written on both sides – and a badge on a chain. (Tr. 464-65.) Ryan was also wearing a vest that said "Police" on the front and back. (Tr. 635-36.). As they drove, Breuer said to Ryan, "[t]here's Mo T," meaning the Petitioner. (Tr. 482.) The Petitioner was standing in the driveway at 61 Folsom Avenue, leaning on a black SUV-type vehicle. (Tr. 482.)

Breuer drove past and turned around, stopped at a location on the side of the road from which to conduct surveillance of the Petitioner. (Tr. 483-84.) Breuer observed the Petitioner lean a couple of times into the black vehicle through an open side door. (Tr. 483.) At some point, the Petitioner entered the vehicle and drove out of the driveway onto Folsom Avenue heading south. (Tr. 486) Breuer pulled out and traveled north. (Tr. 487.)

As the Petitioner was driving, he made eye contact with Breuer and Ryan. The Petitioner then immediately stopped his vehicle, put it in reverse, and screeched the tires while driving in reverse down Folsom Avenue. (Tr. 487-89.) The Petitioner was not wearing a seatbelt. (Tr. 488.) Breuer turned on his car light and siren and followed as the Petitioner continued down Folsom Avenue until he reached 61 Folsom, where he proceeded into the driveway. (Tr. 488-89.)

Breuer stopped his vehicle perpendicular across the driveway at 61 Folsom and exited the car. (Tr. 490-91.) Ryan also exited the car and displayed his badge and walked to the Petitioner's car, but he had to turn back to grab a portable radio. (Tr. 643.). As Breuer approached the Petitioner's vehicle, the Petitioner exited his vehicle, with the engine still running. (Tr. 491.). The Petitioner placed his left hand into his pants pocket, creating a bulge as if he was holding something, and Breuer asked to see his hand. (Tr. 491.) The Petitioner replied,

3

"yo, Chris, why you got to do me like this[?]" (Tr. 492.) Breuer again asked the Petitioner to take his hand out of his pocket so as to ensure that the Petitioner did not have any weapons or anything that could hurt him. (Tr. 492.)

Finally, after being asked several times, the Petitioner removed his left hand from his pocket, immediately using it to punch, from a foot away, Breuer on the right side of his face. (Tr. 493.) This caused Breuer sharp pain, who stumbled back before regaining his balance. (Tr. 494.) Breuer dove toward the Petitioner to grab him to place him under arrest, but the Petitioner knocked him to the ground, causing Breuer to land on his left shoulder onto the blacktop driveway. (Tr. 494.) Breuer had previously injured his left shoulder in October 2007, but had returned to work from that injury without any further problems. (Tr. 622-23.)

Ryan subsequently approached the Petitioner, who punched at him, and a struggle ensued as the two rolled around the driveway. During the struggle, Ryan felt his right knee buckle and pop, and which accompanied by a sharp pain shooting from his knee. (Tr. 647.)

As Ryan held the Petitioner around the waist or chest area, the Petitioner entered a crouched position and began to stand up. He took a white object, a sock from his left pocket, which he tossed over the hedges on the front lawn next to a tree on 61 Folsom Avenue. (Tr. 459.) The Petitioner continued to struggle, but the detectives finally subdued him. (Tr. 497-98.)

As Ryan stayed on top of the now-handcuffed petitioner, who was on his stomach in the driveway, Breuer retrieved the sock. (Tr. 499.) Inside the sock was a black scale and two bags of a light-colored substance in them. (Tr. 459-60.) During his police career, Breuer had considerable experience with cocaine. (Tr. 499-500.)

Breuer, still in pain and having a hard time moving his left shoulder, needed medical attention. (Tr. 508) The next day, Breuer was unable to attend work due to his injuries. He

could not lift his left arm over his shoulder without pain and was not allowed to return to work. (Tr. 530.) On October 22, 2008, Breuer visited a physician because he was still in pain. (Tr. 530.)

In August 2009, Breuer had a "flare-up" of pain in his shoulder. (Tr. 533-34.) On September 10, 2009, he received two cortisone injections into his arm, but was unable to return to work until September 22, 2009. (Tr. 535-37.). As of the date of his trial testimony, April 22, 2010, Breuer was still experiencing pain in his shoulder. (Tr. 538.)

Dr. Scott Alpert, who treated Breuer both regarding his prior shoulder injury and this shoulder injury, also testified. At a visit on October 22, 2008, Dr. Alpert documented pain over the AC joint, with extreme tenderness; there was some inflammation around the rotator cuff. (Tr. 755-756.) A subsequent MRI revealed a contusion/bone bruising consistent with the injury in this case.

At a follow up visit on March 9, 2009, Breuer's symptom's worsened, there being more tenderness in his shoulder. Dr. Alpert gave him a cortisone injection in the shoulder. (Tr. 761-62.). After another flare up in July 2009, Dr. Alpert prescribed oral steroids to alleviate the symptoms. (Tr. 763-64.) Breuer's pain continued to be significant into September 2009, at which time, he was given two more cortisone injections. (Tr. 764-65.) Because of continuing problems to his shoulder, in October 2009, Dr. Alpert recommended that Breuer undergo an arthroscopy with a subacromial decompression and AC joint recession. (Tr. 766.)

As to Ryan's injuries, Ryan stated that he difficulty bending his knee and heard clicking inside his knee. (Tr. 667.). His discomfort lasted about 10 days to two weeks and he was able to return to work on October 28, 2008. (Tr. 669.) He was seen by orthopedic surgeon Dr. Stuart Cherney, who first treated Ryan for a torn anterior cruciate ligament and sprain to the medial

collateral ligament in his right knee in 2006. (Tr. 796-98.) Ryan reinjured his knee in January 2008, but the symptoms were substantially resolved by February 12, 2008. (Tr. 798-99.)

Following the Petitioner's arrest, Dr. Cherney examined Ryan on October 13, 2008. (Tr. 801.). Dr. Cherney observed some tenderness over the anteromedial joint line. (Tr. 801.) A follow-up MRI suggested that Breuer had suffered subluxation of the knee. (Tr. 802.). Ryan was cleared on October 23, 2008 to return to work.

Subsequent to a jury trial in the County Court, Suffolk County (Hudson, J.), on May 5, 2010, the Petitioner was found guilty of criminal possession of a controlled substance in the second degree; assault in the second degree; and unsafe backing in violation of Vehicle and Traffic Law § 1211(a). On September 9, 2010, the Petitioner was sentenced to a determinate term of eight years imprisonment, with a five-year period of post-release supervision, on the criminal possession charge, and to six years imprisonment and three years of post-release supervision on the assault conviction; the sentences to run concurrently.

The Petitioner appealed his judgment of conviction and sentence. On appeal, the Petitioner argued that the trial court, among other things, improperly (1) denied his motion to suppress certain evidence; (2) admitted limited testimony that the police were familiar with the Petitioner; (3) admitted police radio calls; (4) responded to a jury's partial verdict note; (5) denied the Petitioner's request to charge lesser-included offenses; and (6) improperly imposed an excessive sentence. The Petitioner also challenged the sufficiency of the evidence.

On March 27, 2013, the Appellate Division, Second Department rejected all but one of the Petitioner's claims – that is, the court modified the judgment to vacate the conviction of unsafe backing and dismissed that count. People v. Taylor, 104 A.D.3d 961, 962, 961 N.Y.S.2d 566. Other parts of the Appellate Division decision are recounted throughout this opinion.

On June 25, 2013, the Petitioner moved for leave to appeal to the New York Court of Appeals, but that motion was denied. 21 N.Y.3d 1010, 993 N.E.2d 128.

As stated above, on January 29, 2014, the Petitioner commenced this habeas petition pursuant to 28 U.S.C. §2254.

## II.     DISCUSSION

A.     <u>The Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), a writ of habeas corpus shall not issue with respect to any claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to," or involved an unreasonable application of, "clearly established federal law" as determined by the United States Supreme Court, or, (2) "was based on an unreasonable determination of the facts" in light of the evidence presented. 28 U.S.C. § 2254(d); <u>see also</u> <u>Gutierrez v. McGinnis</u>, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. <u>Harrington v. Richter</u>, __ U.S. __ , ___ , 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011); <u>see also</u> <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir. 2001). "An adjudication on the merits is one that (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." <u>Bell v. Miller</u>, 500 F.3d 149, 155 (2d Cir. 2007) (internal quotations omitted), citing <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir. 2001).

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." <u>Harrington</u>, 131 S. Ct. at 786 (2011) (quoting <u>Jackson v. Virginia</u>, 443 U.S.

307, 332 n. 5, 99 S. Ct. 2781, 61 L. Ed .2d 560 (1979)).  Review under the AEDPA "demands

that state-court decisions be given the benefit of the doubt." Hardy v. Cross, __ U.S. __, __, 132

S. Ct. 490, 491, 181 L. Ed. 2d 468 (2011) (per curium) (internal quotation marks omitted).  In

applying these standards on habeas review, this Court reviews the "last reasoned decision" by the

state court. Ylst v. Nunnemaker, 501 U.S. 797, 804, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991);

Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000).  Where AEDPA deference applies, "a state

court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing

evidence.'" Drake v. Portuondo, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. §

2254(e)(1)).

Under the procedural default doctrine, a federal court will not review the merits of claim

raised in a habeas petition, including a constitutional claim, if the state court declined to address

the claim because the prisoner failed to meet a state procedural requirement and the state court

decision is based on independent and adequate procedural grounds. See Walker v. Martin, __

U.S. ___ , 131 S. Ct. 1120, 1127-28, 179 L. Ed. 2d 62 (2011) (citations omitted).  A state rule or

requirement must be firmly established and regularly followed by the state in question to qualify

as an adequate procedural ground. See Beard v. Kindler, 558 U.S. 53, 130 S. Ct. 612, 618 (2009)

(internal quotation marks and citation omitted).  A state court decision will be "independent"

when it "fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d

Cir. 2006) (citation omitted).  As noted later, a state prisoner can obtain federal habeas review

despite having defaulted on his federal claim in state court, if he can demonstrate cause for the

default and actual prejudice resulting or he can show that failure to consider the claim will result

in a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 451, 120 S. Ct.

1587, 146 L. Ed. 2d 518 (2000).

B. The Fourth Amendment Claims

The Petitioner first challenges the basis for the detectives' stop of his vehicle and argues that the evidence seized therefrom – i.e. the cocaine, scale, and sock – should have been suppressed.  The Appellate Division rejected this argument, reasoning

> that [the]  two detectives possessed probable cause to stop the defendant's car based upon their observations of him driving without wearing a seat belt . . . The hearing court also properly denied that branch of the defendant's omnibus motion which was to suppress a sock containing cocaine and a small digital scale, because they were abandoned by the defendant. The evidence established that a struggle ensued between the detectives and the defendant when the detectives tried to arrest him. During the course of the struggle, the defendant abandoned the contraband by reaching into his pocket and throwing the sock onto a nearby lawn.

People v. Taylor, 104 A.D.3d 961, 962, 961 N.Y.S.2d 566, 568 (citations omitted).

However, the Court finds that this Fourth Amendment claim is barred from review by the doctrine set forth in Stone v. Powell, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976).  In Stone, the Supreme Court declined to extend the "exclusionary rule" to habeas cases and held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494.  Interpreting Stone, the Second Circuit has held that habeas review of decisions implicating the exclusionary rule is limited to situations in which "the state provides no corrective procedures at all to redress Fourth Amendment violations," or where there is a corrective procedure "but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process." Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc). Courts within this Circuit have "repeatedly recognized that New York provides an adequate corrective procedure for Fourth Amendment claims." Kelly v. Griffin, 12–CV–3384 (BMC), 2012 WL 6569769, at *3 (E.D.N.Y. Dec. 14, 2012) (citing Capellan v. Riley, 975 F.2d 67 (2d

Cir. 1992); Guzman v. Greene, 425 F. Supp. 2d 298 (E.D.N.Y. 2006); Crispino v. Allard, 378 F. Supp. 2d 393 (S.D.N.Y. 2005)).

Here, the Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim both at a pretrial suppression hearing and to the Appellate Division, at which times he was represented by counsel. Where a petitioner raises his "Fourth Amendment claims in these state fora," a petitioner has demonstrated "that state process was available, and indeed, that he availed himself of that process." White v. West, 04–CV–02886 (RRM), 2010 WL 5300526, at *12 (E.D .N.Y. Dec. 6, 2010) (citing Singh v. Miller, 104 F. Appx. 770, 772 (2d Cir. 2004)).

Further, the Petitioner "has not demonstrated any infirmity with the courts' processes or determination of his Fourth Amendment claim other than his disagreement with the result. [The] Petitioner had an opportunity to litigate his Fourth Amendment claim fully and fairly in state court, and therefore his claim is barred from federal habeas review." Edwards v. Superintendent, Southport C.F., 09-CV-274 (PKC), 2013 WL 3788599, at *12 (E.D.N.Y. July 19, 2013).

In any event, the Petitioner's Fourth Amendment claim is without merit and does not warrant habeas corpus relief. "[T]he Appellate Division rejected petitioner's Fourth Amendment claim on the merits; therefore, AEDPA deference applies." Garcia v. Artus, 08CV1423 (JFB), 2010 WL 1816333, at *6 (E.D.N.Y. May 5, 2010).

The Fourth Amendment establishes a constitutional right against "unreasonable searches and seizures." U.S. Const. amend. IV. A police officer "seizes" a vehicle and its occupants within the meaning of the Fourth Amendment whenever he or she executes a vehicular stop, however brief; therefore, the stop must be reasonable under the circumstances. Wren v. United States, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). A traffic stop is justified if a police officer has probable cause or reasonable suspicion to believe that an individual

violated the traffic laws. <u>Delaware v. Prouse</u>, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660 (1979). It is immaterial whether the police officer had additional subjective motivations for making the stop. <u>See</u> <u>Whren</u>, 517 U.S. at 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (finding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

In this case, the Government established that, upon making eye contact with the detectives, the Petitioner put his car in reverse and drove down Folsom Avenue while not wearing a seatbelt. The fact that the Appellate Division set aside his conviction for unsafe backing, which required proof beyond a reasonable doubt, does not, by necessity, lead to the conclusion that the detectives lacked probable cause to stop the Petitioner's vehicle on that basis. Regardless, the seatbelt violation afforded the detectives an independent basis to stop the vehicle.

Similarly, the Appellate Division reasonably affirmed the trial court's denial of the Petitioner's motion to exclude the evidence of cocaine which was in the possession of the Petitioner. "It is settled that a warrantless seizure of property that has been abandoned does not violate the Fourth Amendment." <u>United States v. Springer</u>, 946 F.2d 1012, 1017 (2d Cir. 1991); <u>see</u> <u>United States v. Lee</u>, 916 F.2d 814, 818 (2d Cir. 1990) ("When a person voluntarily abandons property, . . . he forfeits any reasonable expectation of privacy that he might have had in the property."). The evidence indicated that the Petitioner abandoned the sock of cocaine when he threw it into the hedges. In doing so, the Petitioner immediately forfeited any privacy right he had in the sock. The Petitioner failed to prove facts by clear and convincing evidence to the contrary at the trial, so that the Appellate Division's determination that Petitioner lacked standing to challenge the legality of the seizure because he abandoned the package was reasonable. Therefore, § 2254(d) precludes this Court from granting the Petitioner habeas relief based on his Fourth Amendment claims.

C.  The Fifth Amendment Claims

The Petitioner also challenges the admissibility of his statement -- namely, "yo, Chris, why you got to do me like this[?]" – made to the detectives as they approached him because it was made without the warnings set forth in Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966).  The Appellate Division held that the trial court correctly determined that the "statements [the Petitioner] made to the detectives upon being directed to remove his hands from his pockets [were admissible] because he was not thereby subject to interrogation or its functional equivalent." 104 A.D.3d 961, 962, 961 N.Y.S.2d 566, 568.  This conclusion was not contrary to, nor an unreasonable application of, clearly established federal law.

"Miranda set[s] forth rules of police procedure applicable to 'custodial interrogation.'" Oregon v. Mathiason. 429 U.S. 492, 494, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977).  "[C]ustodial interrogation [ ] mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id.  "[T]he definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301–2, 64 L. Ed. 2d 297; 100 S. Ct. 1682 (1980) "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by" Miranda 's holding. Miranda, 384 U.S. at 478.

Here, the evidence revealed that the Petitioner placed his left hand into his pants pocket, resulting in a bulge and thereby creating a safety concern for the detectives who were then permitted to request that the Petitioner remove his hands from his pockets. People v. Winchester, 14 A.D.3d 939, 940, 790 N.Y.S.2d 238 (3d Dep't 2005) ("request that defendant remove his hand from his pocket was a de minimus intrusion and a reasonable safety measure that did not

require a founded suspicion"); lv. denied, 5 N.Y.3d 796, 835 N.E.2d 677 (2005); People v. Gil, 211 A.D.2d 99, 102, 626 N.Y.S.2d 103 (1st Dep't 1995) ("All the police required of the passengers was that they keep their hands in plain view, a not unreasonable request . . .").

Even if the Petitioner was in the "custody" of the detectives as they approached him, "[t]he cases are uniform that the spontaneous declaration of a suspect in custody, made before the police have the opportunity to advise him of his Miranda rights, does not result in a Miranda violation." Folkes v. Lee, 10 CIV. 5416 (BMC), 2011 WL 2610496, at *4 (E.D.N.Y. June 30, 2011). "[W]here a defendant spontaneously and voluntarily makes self-incriminating statements without any prompting by law enforcement officers, his statements are admissible even if Miranda warnings had not yet been recited to him." U .S. v. Vasta, 649 F. Supp. 974, 988 (S.D.N.Y.1986); see also Miranda, 384 U.S. at 478 ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."); U.S. v. Mason, 550 F. Supp. 2d 309, 319 (E.D.N.Y. 2008) ("Here the [o]fficers neither asked any questions nor otherwise did anything . . . that would be the equivalent of interrogation. Accordingly, these statements are admissible."); U.S. v. Bravo, 403 F. Supp. 297, 304 (S.D.N.Y. 1975) (same). Stated otherwise, the "[P]etitioner's statement was a classic 'blurt,' not a Miranda violation." Folkes, at 2011 WL 2610496, at * 4.

To the extent the Petitioner challenges his statement on hearsay grounds, the Court finds this argument to be without merit. "The Petitioner's spontaneous, non-custodial statements to the police were properly introduced by the prosecution as admissions against a party opponent." Mills v. Lempke, 11-CV-0440 (MAT), 2013 WL 435477, at *20 (W.D.N.Y. Feb. 4, 2013); see People v. Chico, 90 N.Y.2d 585, 589, 665 N.Y.S.2d 5, 687 N.E.2d 1288 (1997) ("'[A]dmissions by a party of any fact material to the issue are always competent evidence against him, wherever,

whenever, or to whomsoever made [.]'") (quotation omitted); Fed. R. Evid. 801(d)(2)(A) ("Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay: . . . (2) An Opposing Party's Statement. The statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity. . . .").

In any event, the erroneous admission of hearsay, in and of itself, is not enough to establish a constitutional violation. Cf. Alvarez v. Scully, 833 F. Supp. 1000, 1005 (S.D.N.Y. 1993) ("An erroneous evidentiary ruling could rise to the level of a constitutional claim cognizable on a habeas petition if it were shown that the error so infected the proceedings as to have rendered a petitioner's trial fundamentally unfair."). The Court must determine whether the erroneous admission was "material," i.e. whether it "deprive[d] the defendant of fundamental fairness." Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988). In this case, the Court is not persuaded that any error rises to a constitutional level.

D. The Background Evidence that the Police Were Familiar with the Petitioner

The Petitioner also contends that the trial court improperly permitted the detectives to testify about the fact that they had prior interactions with him.

As an initial matter, the Court notes there was no testimony about any prior criminal behavior by the Petitioner. Even if this testimony tended to suggest that the Petitioner engaged in prior criminal behavior, "[t]he Court is aware of no case in which the Supreme Court has held that the admission of uncharged crimes violates due process." Crowder v. Ercole, 09-CV-3401 (CBA), 2012 WL 5386042, at *3 (E.D.N.Y. Nov. 2, 2012), appeal dismissed (2d Cir. Jan. 16, 2013).

Moreover, a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68, 112 S.

Ct. 475, 116 L. Ed. 2d 385 (1991). It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983); see generally Estelle, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("Habeas corpus relief does not lie for errors of state law." (citations omitted)). Instead, for a habeas petitioner to prevail in connection with a claim regarding an evidentiary error, the petitioner must demonstrate that the error deprived him of his right to "a fundamentally fair trial." Taylor, 708 F.2d at 891; see also Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a *fundamentally* fair trial.'"(quoting Rosario, 839 F.2d at 925 (internal quotation marks omitted))).

In determining whether a state court's alleged evidentiary error deprived a petitioner of a fair trial, federal habeas courts engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under state law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. See Wade v. Mantello, 333 F.3d 51, 59-60 & n. 7 (2d Cir. 2003); Ramos v. Phillips, No. 104–CV–1472 (ENV), 2006 WL 3681150, at *6 (E.D.N.Y. Dec 12, 2006).

Here, as a matter of New York State law, the testimony was properly introduced to show that the detectives and the Petitioner were familiar with each another. People v. Dorm, 12 N.Y.3d 16, 19, 874 N.Y.S.2d 866, 903 N.E.2d 263 (2009) (finding no error in trial court's admission of evidence of previous arguments and conflicts between the victim and the defendant because evidence, among other things, "provided necessary background information on the nature of the relationship and placed the charged conduct in context"); People v. Westerling, 48 A.D.3d 965, 966, 852 N.Y.S.2d 429, 431 (3d Dep't 2008) ("Evidence that defendant grabbed the victim

15

during an argument the night before the incident at issue, leaving a bruise, was relevant to the background of this incident and was probative of her state of mind as well as his intent."); People v. James, 19 A.D.3d 616, 616, 797 N.Y.S.2d 129, 130 (2d Dep't 2005) (finding, in a homicide case, that evidence of the defendant's prior assaults on victim was properly admitted as "relevant background material to enable the jury to understand the nature of the defendant's relationship with the decedent").

Even if the admission of the prior acts evidence was error under state law, the trial court's limiting instruction precludes the conclusion that admission of the prior acts evidence was "so pervasive as to have denied him a fair trial." In this case, the court gave the jury the following unobjected to limiting instructions:

> At this time [the Court] will [] give a cautionary instruction to the jury. Ladies and gentlemen of the jury, the witness has testified that he has met [the Petitioner] on a prior occasion. This testimony was allowed as I instructed you before solely for the purpose of the defendant's knowledge of the witness being a police officer and for no other reason. You may not take this statement by this witness as evidence of any wrongful behavior on the part of [the Petitioner] in the past, nor are you to speculate in any regard concerning that prior meeting. Can you all follow my instruction[s] in that regard?

(Tr. 631-32). This instruction limited any prejudice by the introduction of the evidence of prior acts.

As a matter of law, the jury must be presumed to have followed the trial court's instructions concerning the limited use that it could make of the Petitioner's familiarity with the detectives. See e.g., CSX Transp., Inc. v. Hensley, 556 U.S. 838, 841, 129 S. Ct. 2139, 2141, 173 L. Ed.2d 1184 (2009) ("Jurors routinely serve as impartial factfinders in cases that involve sensitive, even life-and-death matters. In those cases, as in all cases, juries are presumed to follow the court's instructions."); United States v. Whitten, 610 F.3d 168, 191 (2d Cir. 2010)

("We presume that juries follow instructions. . . .") "In light of the entire record, there is nothing about the admission of this evidence, even if it were erroneous, that rendered petitioner's trial unfair." Bessaha v. Rock, 09-CV-3581 (JFB), 2012 WL 1458195, at *14 (E.D.N.Y. Apr. 27, 2012).

E. The Radio Recordings

The Petitioner further contends that the trial court improperly admitted the police radio recordings for additional assistance after the Petitioner's arrest as excited utterances and present sense impressions. (Tr. 407.)

Again, this issue concerns matters of state law. See People v. Duncan, 46 N.Y.2d 74, 412 N.Y.S.2d 833, 385 N.E.2d 572, 576 (1978), cert. denied, 442 U.S. 910, 99 S. Ct. 2823, 61 L. Ed. 2d 275 (1979). Since generally, habeas relief does not lie for errors of state law, "[e]rroneous evidentiary rulings rarely rise to the level" of a due process violation. Washington v. Schriver, 255 F.3d 45, 56 (2d Cir. 2001)(quoting Agard v. Portuondo, 117 F.3d 696, 705 (2d Cir. 1997), rev'd on other grounds, 529 U.S. 61, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000)).

In any event, the Court properly admitted the evidence. The recording satisfied the excited utterance exception to the hearsay rule, since it evidenced that the caller was under the influence of the excitement of the incident and lacked the reflective capacity essential for fabrication. See People v. Dominick, 53 A.D.3d 505, 505–506, 862 N.Y.S.2d 520 (2d Dep't 2008). Contrary to the Petitioner's contention, the recording was also properly admissible as a present sense impression, since the caller's statements were sufficiently contemporaneous reports of events then being observed by the caller. See People v. York, 304 A.D.2d 681, 681, 757 N.Y.S.2d 495 (2d Dep't 2003) and were corroborated by the evidence adduced at the trial. Cf. People v. Vasquez, 88 N.Y. 2d 561, 575-76, 647 N.Y.S.2d 697, 670 N. E. 2d 1328 (1996).

Insofar as the Petitioner attempts to raise a violation of the Confrontation Clause under Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), this argument lacks merit. In Crawford, 541 U.S. at 55, 68, the Supreme Court held that testimonial hearsay is barred by the Confrontation Clause unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the declarant regarding the statement.

However, the holding in Crawford is inapplicable to the Petitioner's case for two reasons. First, "[t]he call was nontestimonial in nature, since its primary purpose was to obtain an emergency response to the shooting." People v. Dockery, 107 A.D.3d 913, 914, 969 N.Y.S.2d 62, 64-65 (2d Dep't 2013), leave to appeal denied, 22 N.Y.3d 955, 999 N.E.2d 551 (2013). Second, because the declarant, Breuer, testified for the prosecution at trial and was available for cross-examination, the admission of the statements into evidence did not violate the Confrontation Clause or the Supreme Court's ruling in Crawford.

Finally, the Court again notes that the erroneous admission of hearsay, in and of itself, is not enough to establish a constitutional violation. Cf. Alvarez v. Scully, 833 F. Supp. 1000, 1005 (S.D.N.Y.1993) ("An erroneous evidentiary ruling could rise to the level of a constitutional claim cognizable on a habeas petition if it were shown that the error so infected the proceedings as to have rendered a petitioner's trial fundamentally unfair."). The Court must determine whether the erroneous admission was "material," i.e. whether it "deprive[d] the defendant of fundamental fairness." Rosario , 839 F.2d at 924. Based on the facts in the record, the Court is not persuaded that these errors – if they were errors -- rise to a constitutional level.

F. The Rosario Claim

Under New York law, prosecutors must provide a criminal defendant with the pre-trial statements of any witness who will be called to testify on behalf of the prosecution. See N.Y.

C.P.L. § 240.45(1)(a); People v. Rosario, 9 N.Y.2d 286, 288, 173 N.E.2d 881 (1961) . Such

statements are known colloquially as "Rosario material."  In this case, the Petitioner asserts that

the prosecution's delay in the disclosure of certain "Rosario" material violated his right to a fair

trial and that the sanction imposed by the trial court was an inadequate remedy.

Insofar as the Petitioner is raising a pure claim of a Rosario violation, that claim is not

cognizable in a federal writ of habeas corpus. See Morrison v. McClellan, 903 F. Supp. 428, 429

(E.D.N.Y. 1995).  "For the purposes of federal habeas corpus review, a habeas petition can only

be granted to remedy some violation of federal law.  Because the obligation to turn over Rosario

material arises under state law, to the extent that this claim is based on a Rosario violation, it

must fail." Wilens v. Superintendent of Clinton Corr. Facility, 11-CV-1938 (JFB), 2014 WL

28995, at *16 (E.D.N.Y. Dec. 31, 2013).

The Petitioner further claims that there was "a chilling effect" against his obtaining

Rosario material because the trial court would have permitted the People to place on the record,

before the jury, that the material had in fact been turned over.  However, assuming such "a

chilling effect" took place, the Petitioner fails to articulate that such an impairment rose to

constitutional magnitude warranting habeas relief.

G. The Allen Charge

The Petitioner also argues that the trial court's response to the jury's partial verdict note

was improper.

The law governing habeas relief from a state conviction based on alleged coercive jury

charges is also well-established.  "Jury instructions violate due process if they "fail[ ] to give

effect to [the] requirement" that the prosecution prove every element of the charged offense

beyond a reasonable doubt." Dell 'Aera v. James, No. 12–CV–00344 (JFB), 2012 WL 6632673,

at * 6 (E.D.N.Y. Dec. 20, 2012) (citing <u>Middleton v. McNeil</u>, 541 U.S. 433, 437, 124 S. Ct. 1830, 158 L. Ed. 2d 701 (2004) (per curiam)).  However, "a state prisoner making a claim of improper jury instructions faces a substantial burden." <u>Delvalle v. Armstrong</u>, 306 F.3d 1197, 1200 (2d Cir. 2002).  The petitioner must establish that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violate[d] due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.'" <u>Id.</u> at 1201 (quoting <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977)); <u>see</u> <u>Middleton</u>, 541 U.S. at 437 (stating that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation"); <u>Smalls v. Batista</u>, 191 F.3d 272, 277 (2d Cir. 1999) (A jury instruction is to be examined "as part of all the proceedings that were observed by the jury" and in light of the entire instruction; it is not to be examined "in artificial isolation.").

At issue in this case is the state court's <u>Allen</u> charge.  If a jury is deadlocked, courts may give an <u>Allen</u> charge to encourage jurors to continue deliberating with the goal of reaching a verdict. <u>See generally</u> <u>Allen v. United States</u>, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896). The Second Circuit "has consistently reaffirmed its approval of the supplementary charge to encourage a verdict in the face of an apparent deadlock." <u>Smalls</u>, 191 F.3d at 278 (citations omitted).  "Whether an <u>Allen</u> charge is appropriate given the circumstances of a particular case hinges on whether it tends to coerce undecided jurors into reaching a verdict - that is, whether the charge encourages jurors to abandon, without any principled reason, doubts that any juror conscientiously holds as to a defendant's guilt." <u>United States v. Vargas–Cordon</u>, 733 F.3d 366, 377 (2d Cir. 2013) (citation omitted).  Thus, a proper <u>Allen</u> charge requires a trial judge to caution jurors not to abandon their own "conscientiously held beliefs." <u>Smalls</u>, 191 F.3d at 279.

Accordingly, the Second Circuit has upheld charges given in "an evenhanded, noncoercive manner," in which the court cautions that it "would prefer a unanimous verdict if accomplished 'without any juror yielding a conscientious conviction which he or she may have.'" Id. (quoting United States v. Burke, 700 F.2d 70, 80 (2d Cir. 1983)).  The duration between an instruction and the rendering of a jury verdict may be probative of the coercive effect of a trial judge's instructions. Burke, 700 F.2d at 80.

Here, after approximately two days of interrupted deliberation, the jury submitted a note to the Court asking: "Must a unanimous decision be made on all the charges[?] We have come to a decision on four of the five charges.  But can't come to a unanimous decision on one of the charges?" (Tr. 1040).  Faced with the jury's indication of a partial verdict, the trial court had, under New York law, the discretion to reject it.  New York Criminal Procedure Law Section 310.70 states that when a jury returns a partial verdict, the trial judge has the option of either accepting the partial verdict and ordering the jury to continue deliberations on the remaining counts or refusing to accept the partial verdict and ordering the jury "to resume its deliberation upon the entire case."

The trial court stated on the record, not in front of the jury:  "I think that in light of the time in which the jury has deliberated, the fact that they have never announced before this time that they were deadlocked, that at this point in time to take the partial verdict with nothing more than a direction of clarification as to same would be inopportune." (Tr. 1042.)  The trial court expressed its satisfaction that there was a "reasonable possibility of ultimate agreement upon [the] unresolved offense." (Tr. 1042.)

The Court then, in the presence of the jury, gave the following Allen charge:

[T]he Court will instruct you first your verdict as to each count must be unanimous.  Next, if you can't reach a verdict as to each count then you must

inform the Court of your findings.  Before that, however, the Court at this time declines to accept your partial verdict and I'm directing you to resume your deliberations as to the entire case.  The reason for that is as follows.  Members of the jury, you've been conscientiously deliberating in this matter of many hours over the course of two days.  You realize that the only method we have to decide questions of fact in criminal cases is the verdict of the jury.  Absolute certainty can't be expected in all cases.  Although the verdict to which you must agree must be your own verdict, the result of your own conscience, and not a mere acquiescence to the conclusion of your fellow jurors.  Yet, in order to bring 12 minds to a unanimous result, you should and must examine the questions submitted to you with candor and with proper regard to the opinions of each other.

You should remember and consider that the case must be decided at some time, and that any future jury will be selected from the same source and in the same manner as you have been selected, and there is no reason to believe that this case would ever be submitted to 12 more intelligent, impartial or competent people, or that more or clearer evidence would be produced on either side.  Accordingly, it is your duty to decide this case if you can conscientiously do so.

In order to make a decision by you more practicable, the law imposes upon the People the burden of proof to establish every element of the crimes beyond a reasonable doubt, and if there is any such doubt in your mind on any element of the crime you should acquit.

In conferring together, you should pay proper respect to each other's opinions and listen with a disposition to be convinced to each other's arguments.  If the greater majority of you are for conviction, a dissenting juror or jurors should consider whether a doubt in his or her mind is a reasonable one, since it has made no impression upon the minds of the other jurors, who are equally honest and intelligent and who have heard the same evidence with the same attention and same desire to arrive at the truth.

On the other hand, if the majority are for acquittal, the minority ought to seriously ask themselves whether they might not reasonably doubt their judgment which is not concurred in by most of the other jurors and whether they should distrust the weight or sufficiency of the evidence which fails to carry conviction to the minds of other jurors.

You are duty bound to consider the evidence individually and to the listen to the arguments of fellow jurors, but no juror has the responsibility to convince others that his or her position is correct or should be adopted.  A juror's duty is to impartially consider the evidence and try to reach an agreement without surrendering his or her individual views.  You are not an advocate for one side or the other.

With these additional instructions in mind, I will ask you to return to your deliberations and see if you can reasonably arrive at a verdict.  Nothing I have said to you should be construed by you as an indication that you should relinquish your honest convictions in this matter.  Rather, those instructions should be interpreted by you as guidelines for you to follow in attempting to reach a verdict in accordance with the evidence and the convictions of your conscience.

(Tr. 1044-1047.)

In the Court's view, the Petitioner has failed to meet his substantial burden to satisfy a claim for improper jury instructions. The Petitioner has not shown that the jury instruction so infected the trial that he suffered a due process violation. Taken in light of the entire instruction, the charge did not violate the Petitioner's right to a fair trial. The trial court was entitled to give an <u>Allen</u> charge based on the deadlock conveyed in the note from the jury. The charge was not coercive and did not require jurors to forfeit their individually held beliefs, and does not violate the established standards governing an <u>Allen</u> charge. Therefore, the Petitioner has not met his substantial burden to demonstrate a habeas claim for an improper jury instruction.

H. <u>The Lesser-Included Offense Charges</u>

The Petitioner further contends that the trial court was obligated to instruct the jury as to resisting arrest, as a lesser-included offense of assault in the second degree, and criminal possession of a controlled substance in the seventh degree, as a lesser-included offense of criminal possession of a controlled substance in the second degree.

Although the Supreme Court has held that due process requires a trial court to submit jury instructions on lesser included offenses in capital cases if the evidence warrants the charge, <u>Beck v. Alabama</u>, 447 U.S. 625, 637-38, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980), neither the Supreme Court nor the Second Circuit has decided whether the failure to instruct the jury on lesser-included offenses in noncapital cases is a constitutional issue that may be considered on a habeas petition, <u>see</u> <u>Knapp v. Leonardo</u>, 46 F.3d 170, 179 (2d Cir. 1995) (specifically noting that the Second Circuit has not decided the issue)

Further, in <u>Teague v. Lane</u>, 489 U.S. 288, 316, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), the Supreme Court found that "habeas corpus cannot be used as a vehicle to create new

constitutional rules of criminal procedure." Accordingly, in Jones v. Hoffman, 86 F.3d 46 (2d Cir.1996), the Second Circuit held that because a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new constitutional rule, Teague precluded consideration of that issue under habeas corpus review. Id. at 48. Thus, "in the [Second Circuit], habeas review of a state trial court's failure to instruct on lesser-included offenses in noncapital cases is precluded." Franklin v. Ercole, No. 06–CV700 (SJF), 2009 WL 763417, at *13 (E.D.N.Y. Mar. 19, 2009); see also Rasmussen v. Kupec, 54 Fed. App'x 518, 519 (2d Cir. 2003) (citing Jones, 86 F.3d at 48); Bien v. Smith, 546 F. Supp. 2d. 26, 42–43 (E.D.N.Y. 2008) (finding the petitioner's claim not cognizable where the petitioner challenged the trial court's refusal to charge manslaughter in the first degree as a lesser-included offense of murder in the second degree); Maldonado v. West, No. 05–CV–3132 (ENV), 2007 WL 188684, at *6 (E.D.N.Y. Jan. 22, 2007) (noting that "the effect of Knapp and Jones is to preclude habeas review of a state trial court's failure to instruct on lesser-included offenses in noncapital cases").

The present case involves non-capital offenses, as the Petitioner was sentenced to eight years imprisonment on the criminal possession charge with a five-year period of post-release supervision and to six years imprisonment and three years of post-release supervision on the assault conviction; the sentences to run concurrently.

Because consideration of failure to instruct on a lesser-included offense for a non-capital crime would "involve the announcement of a new rule, . . . Teague precludes [] consideration of the issue" under habeas corpus review. Jones, 86 F.3d at 48; see also Smith, 546 F. Supp. at 42-43 (refusing to consider the petitioner's habeas claim on failure to charge lesser offense for non-capital offense).

24

Further, assuming arguendo that the Petitioner's claim is cognizable under 28 U.S.C. § 2254, the claim is without merit as a matter of state law. Indeed, the Appellate Division correctly rejected this argument with respect to the count of criminal possession of a controlled substance in the second degree.

In New York, a defendant is entitled to a lesser included offense charge upon satisfying a well-established, two-prong test. See People v. Barney, 99 N.Y.2d 367, 371, 756 N.Y.S.2d 132, 786 N.E.2d 31 (2003). "First, defendant must establish that it is impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct. Secondly, there must be a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater." People v. Van Norstrand, 85 N.Y.2d 131, 135, 623 N.Y.S.2d 767, 647 N.E.2d 1275 (1995)(citations omitted).

Here, the Court notes that resisting arrest is not a lesser included offense of assault in the second degree:

> It is theoretically possible to commit assault in the second degree as defined by section 120.05 (subd. 3) of the Penal Law without committing the crime of resisting arrest (Penal Law, § 205.30) because the former involves intentional prevention of the performance of a police officer's "lawful duty" while the latter is directed only at proscribing intentional or attempted prevention of "an authorized arrest".

People v. Chesebro, 94 A.D.2d 897, 898, 463 N.Y.S.2d 711, 713 (3d Dep't 1983).

As to the Petitioner's request for a charge of criminal possession of a controlled substance in the seventh degree as a lesser-included offense of criminal possession of a controlled substance in the second degree, the Government acknowledges that such a charge could, in other circumstances, have been appropriate. In this regard, the Court acknowledges that, for example, criminal possession of a controlled substance in the seventh degree has no weight requirement, see Penal Law § 220.03, while the offense of criminal possession of a

controlled substance in the second degree requires possession of a controlled substance with an aggregate weight of four ounces or more, see Penal Law § 220.18 (1).

However, as the Appellate Division held, the parties stipulated that the substance recovered from the scene of the incident was analyzed to be cocaine with an aggregate weight of 4.19 ounces. Absent any factual basis to challenge the weight of the substance recovered, the request for a lesser-included offense was properly rejected by the trial court (Tr. 858-59), as there was no reasonable view of the evidence to support a finding that the weight of the cocaine possessed by the Petitioner was less than four ounces. People v. Walker, 300 A.D.2d 417, 418-419, 750 N.Y.S.2d 785 (2d Dep't 2002)("The evidence presented established that the defendant possessed more than the amount of cocaine necessary to have committed the greater offense in connection with one of several bags of cocaine recovered in his apartment. Thus, there was no reasonable view of the evidence to support a finding that he committed the lesser offense and not the greater."). Accordingly, on the merits, the trial court properly declined to charge criminal possession of a controlled substance in the seventh degree as a lesser-included offense of criminal possession of a controlled substance in the second degree.

I. The Jury's Note Requesting to Examine Certain Items in Evidence

The Petitioner also argues that the trial court's response to the jury's request to examine certain items in evidence was improper. In particular, during deliberations, the jury asked if it could observe the sock and drug evidence together, outside of the sealed bags in which they were contained, to determine if the drug evidence could fit inside the sock as testified by the police. The trial court expressed its intention to instruct the jurors that they could not take items out of certain sealed bags which contained contraband but they could examine them. (Tr. 967-68).

When asked if that was agreeable to counsel, defense counsel responded in the affirmative. (Tr. 968.)

Federal courts are generally not permitted to "review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). A state law ground is deemed "adequate" if the rule "is firmly established and regularly followed by the state in question." Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011) (quoting Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999)).

Even if the Petitioner's challenge to the trial court's response to the jury's request were cognizable on habeas review, the claim is procedurally barred because the Appellate Division's decision rested upon an independent and adequate state law ground, namely that the Petitioner failed to preserve his claim for appellate review.

"The fact that the Appellate Division proceeded to evaluate the merits of Petitioner's legal insufficiency of the evidence claim does not revoke the procedural bar." Smith v. Lee, 11-CV-0530 (MKB), 2014 WL 1343066, at *7 (E.D.N.Y. Mar. 31, 2014). In addition to specifically stating that the Petitioner's challenge to the trial court's response to the jury's request was "unpreserved for appellate review," the Appellate Division held that "[i]n any event" it was "without merit." "[W]hen a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (quoting Glenn v. Bartlett, 98 F.3d 721, 725 (2d Cir.

1996)); <u>Young v. New York</u>, No. 11-CV-00110 (JFB), 2012 WL 6644993, at *12 (E.D.N.Y. Dec. 20, 2012) ("When a state court relies on an independent and adequate state law ground – such as, in this case, failure to preserve the issue for appeal – federal habeas review is foreclosed. This is true even if the state court rules in the alternative on the merits of petitioner's claims." (citations omitted)). Accordingly, despite the Appellate Division evaluating the merits of Petitioner's legal insufficiency of the evidence claim, it is nevertheless procedurally barred.

Although a federal court may review a claim that is procedurally barred under certain circumstances, the Petitioner has not alleged circumstances justifying such a review. A federal court may review a claim that is procedurally barred by an independent and adequate state ground if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>House v. Bell</u>, 547 U.S. 518, 536, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) ("As a general rule, claims forfeited under state law may support federal habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error . . . . The bar is not, however, unqualified . . . [T]he Court has recognized a miscarriage-of-justice exception . . . .'" (citations omitted)); <u>Rush v. Lempke</u>, 500 F. App'x 12, 15 (2d Cir. 2012) ("When a petitioner 'has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" (quoting <u>Coleman</u>, 501 U.S. at 750)). "The cause requirement is met if some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule."

Gutierrez v. Smith, 702 F.3d 103, 111 (2d Cir. 2012); see also Maples v. Thomas, 565 U.S. ——, ——, 132 S. Ct. 912, 922, 181 L. Ed. 2d 807 (2012).

Prejudice is established when a petitioner is able to show that the alleged errors at trial resulted in "substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Guiterrez, 702 F.3d at 112 (quotation marks and citations omitted). A fundamental miscarriage of justice arises when Petitioner "is actually innocent of the crime for which he has been convicted." Cotto v. Herbert, 331 F.3d 217, 239 n. 10 (2d Cir. 2003) (quoting Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002)); see also McQuiggin v. Perkins, 569 U.S. ——, ——, 133 S. Ct. 1924, 1927, 185 L. Ed. 2d 1019 (2013) ("[The] fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." (quoting Herrera v. Collins, 506 U.S. 390, 404, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993))).

In the instant case, the Petitioner has not argued that there was cause for the procedural default or actual prejudice. The Petitioner also has made no claim of actual innocence. Therefore, failure to review the Petitioner's claim as to the jury's request to examine certain items in evidence would not result in a miscarriage of justice. The Court is procedurally barred from reviewing the Petitioner's challenge to the trial court's response to the jury request.

J.   The Legal Sufficiency of the Evidence

The Petitioner also argues that the evidence adduced at trial was insufficient to convict him of assault in the second degree, Penal Law § 120.05(3).

The Appellate Division did not directly address this issue. That said, "[c]laims that are not found to have been procedurally barred are presumed to have been decided on the merits, so that AEDPA deference applies." Ariza v. Lee, 13-CV-359 (JBW), 2013 WL 6008920, at *5

(E.D.N.Y. Nov. 13, 2013). "[I]n the absence of a clear and express reliance on a state procedural bar, those state court decisions that fall within the first category must be 'afforded AEDPA deference as adjudications on the merits under 28 U.S.C. § 2254(d).'" Rush v. Artuz, No. CV–99–2840 (DGT), 2009 WL 982418, at *5 (E.D.N.Y. April 10, 2009), quoting Jimenez v. Walker, 458 F.3d 130, 145 (2d Cir. 2006).

A habeas petitioner challenging his conviction on the ground that it was not supported by sufficient evidence "bears a very heavy burden." Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d. Cir. 1997)(quotation marks and citation omitted). The Supreme Court has reaffirmed the fundamental principle "that it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." Cavazos v. Smith, —— U.S. ——, ——, 132 S. Ct. 2, 5, 181 L. Ed. 2d 311 (2011). Therefore, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Id.; Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (holding that a petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt").

In addition to emphasizing the deference owed to a jury's verdict, the Supreme Court in Cavazos also "highlight[ed] the necessity of deference to state courts in § 2254(d) habeas cases," 132 S. Ct. at 7, reminding lower courts that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." Id. at 4. "The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Id. (quoting Renico v. Lett, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010).

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (quoting Quantararo v. Hanslamaier, 186 F.3d 91, 97 (2d Cir. 1999)). New York Penal Law defines assault in the second degree – a class D felony – as requiring, among other things, when an individual "causes physical injury" to a police officer with "intent to prevent" them from "performing a lawful duty."

In this case, the Petitioner argues that there was insufficient proof of the element that the police were initially performing a "lawful duty" as required by Penal Law § 120.05(3). Notwithstanding the Appellate Division ruling that insufficient evidence supported the conviction for unsafe backing, the detectives were permitted to stop the Petitioner's vehicle after they observed him driving without a seatbelt. "[A]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred, even if the underlying reason for the stop was to investigate another matter unrelated to the traffic violation." People v. Wilson, 96 A.D.3d 980, 948 N.Y.S.2d 77 (2d Dep't 2012)(citation and quotation marks omitted). Further, the evidence indicated that, upon the police officers' approach, the Petitioner failed to comply with the lawful request to remove his hands and then attacked the detectives.

The Petitioner also asserts that there was insufficient evidence of "physical injury." Physical injury is defined as "impairment of physical condition or substantial pain." N.Y. Penal Law § 10.00 (9). "'[S]ubstantial pain' cannot be defined precisely, but it can be said that it is more than slight or trivial pain." Id. Thus, substantial pain requires "more than a mere technical battery"; "petty slaps, shoves, kicks and the like delivered out of hostility, meanness and similar motives, are not within the definition of the statute." People v. Henderson, 92 N.Y.2d 677, 680,

708, 685 N.Y.S.2d 409, 708 N.E.2d 165 (1999). "[P]ain need not, however, be severe or intense to be substantial." <u>Chiddick</u>. 8 N.Y.3d at 447, 834 N.Y.S.2d 710, 866 N.E.2d 1039.

"The New York Court of Appeals has outlined several factors relevant to the determination of whether pain is 'substantial' within the meaning of the statute: (1) whether the injury suffered 'would normally be expected to bring with it more than a little pain;' (2) the victim's 'subjective description of what he felt;' (3) whether the victim sought medical treatment; and (4) the defendant's motive in inflicting the harm." <u>Taylor v. Brown</u>, No. 10–CV–5262 (SAS), 2011 WL 797448, at *17 (S.D.N.Y. Mar. 8, 2011), <u>report and recommendation adopted</u>, No. 10–CV–5262 (SAS), 2011 WL 2493528 (S.D.N.Y. June 22, 2011) (quoting <u>Chiddick</u>, 8 N.Y.3d at 447–48, 834 N.Y.S.2d 710, 866 N. E. 2d 1039). However, none of these factors is dispositive. <u>See</u> <u>United States v. Graves</u>, 466 F. App'x 56, 57 (2d Cir. 2012).

Given the evidence presented at trial, the jury could have reasonably determined that Breuer sustained "physical injury" as defined in Penal Law § 10.00(9). Breuer's testimony about the incident demonstrates that he was subjected to more than just "petty slaps, shoves, or kicks." <u>Henderson</u>, 92 N.Y.2d 677 at 708, 685 N.Y.S.2d 409, 708 N.E.2d 165. Further, Breuer testified that he experienced a substantial amount of pain after the altercation, and he could not immediately return to work due to his injuries. He underwent physical therapy until he was able to return to work on November 25, 2008, more than six weeks after the occurrence. (Tr. 532.) Thereafter, Breuer still experienced recurrent issues related to his injuries. On September 10, 2009, he received two cortisone injections in his arm, but was unable to return to work until September 22, 2009. (Tr. 535-37.) As of the date of his trial testimony, April 22, 2010, Breuer still experienced pain in his shoulder. (Tr. 538.) Accordingly, viewed in a light most favorable to

the Prosecution, this evidence was sufficient to prove that the Petitioner suffered an impairment of physical condition and substantial pain. See N.Y. Penal Law §§ 10.00(9), 120.00(1).

It bears mentioning that, in his application for relief, the Petitioner makes a fleeting reference to the "weight of the evidence" at the trial. A "weight of the evidence" claim is based on state law. See Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."). As previously mentioned, the Court cannot consider a purely state law claim on federal habeas review. See Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law . . . ."). In any event, the Court finds that the jury verdict was not against the weight of the evidence.

K. The Sentence

As noted above, the Petitioner was sentenced to eight years imprisonment on the criminal possession charge with a five-year period of post-release supervision and to six-years imprisonment and three years of post-release supervision on the assault conviction; the sentences to run concurrently.

The Petitioner's claim as to his sentence is not cognizable on federal habeas corpus review. An excessive sentence claim may not provide grounds for habeas corpus relief where a petitioner's sentence is within the range prescribed by state law. Pina v. Kuhlmann, 239 F. Supp. 2d 285, 288 (E.D.N.Y. 2003) (citing White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see also Gonzalez v. Travis, 172 F. Supp. 2d 448, 457 (S.D.N.Y. 2001) (finding excessive sentence claim not cognizable for habeas review where sentence was within statutory range); Herrera v. Artuz, 171 F. Supp. 2d 146, 151 (S.D.N.Y. 2001) (holding the trial court's imposition of

consecutive sentences was appropriate and did not provide ground for habeas relief); McCalvin v. Senkowski, 160 F. Supp. 2d 586, 589 (S.D.N.Y. 2001) ("Sentencing decisions are not cognizable on habeas review unless the sentence imposed falls outside the range prescribed by state law."); Thomas v. Senkowski, 968 F. Supp. 953, 956-57 (E.D.N.Y. 1997) (dismissing excessive sentence claim where the petitioner's sentence fell within the range prescribed by state law).

Here, the Petitioner does not dispute that his sentence was within the range prescribed by New York law. See New York Penal Law § 70.00. Thus, the Appellate Division determination that the Petitioner's sentence was not unduly harsh or excessive was not contrary to, nor an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1). His sentence therefore cannot be grounds for habeas relief.

### III. CONCLUSION

For the foregoing reasons, the Petitioner's § 2254 habeas petition is dismissed in its entirety, and the Clerk of the Court is instructed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
May 7, 2014

        _Arthur D. Spatt_____
        ARTHUR D. SPATT
        United States District Judge